Good morning, Your Honor. Good morning, Your Honor. May I please the court, Daniel Lim for the United States. Your Honor, in this case, U.S. v. Grimaldo, pursuant to this court's case law and precedent, when there are two sentences that are concurrently imposed and there is an error associated with the shorter of the two concurrent sentences, that error doesn't affect the defendant's substantial rights if the longer sentence remains valid. And that's the case here. Down below in the district court at sentencing, the defendant was sentenced on count one to three years and on count three to ten years. And while the sentence on count one was erroneously longer than it should have been, it was swallowed up by the much longer 120-month, ten-year sentence on count three. Therefore, it did not affect the defendant's substantial rights. Well, I guess my only question is this. I get the point that the longer sentence subsumed the shorter sentence. But on the other hand, effectively, the district judge imposed an illegal sentence. And, you know, any review in the future of the length of his sentence would show up that way. The district judge essentially broke the law. How can that not affect the fairness of the proceeding? Well, Your Honor, under Rosales, for a decision erroneous sentence to affect the fairness or integrity of a judicial proceeding, it must subject the defendant to an over-length period of incarceration, or in other words, a period of incarceration that would be longer than what is allowed. Again, in this case, that wouldn't be the case. The defendant would be serving and is continuing to serve the legal 120-month sentence on count three, despite their error on count one. And again, these are the last two prongs of the plain error review that the government argues that the defendant cannot meet. This latter one, where it doesn't affect judicial proceedings, is the fourth. And also the third, which is that it doesn't affect the defendant's substantial rights, I think is, based on case law, true here. Again, under Ramos-Godinez, under Mitchell, this Court has found that when there are two sentences and there might be some error associated with the shorter-length sentence, despite that error, because the defendant would not serve an hour or a day longer than what is permissible, what the disreport below had intended, there is no effect on the defendant's substantial rights. What about the concept of the unfairness of the proceeding from the perspective of an outsider, for example? Yes, Your Honor, and I believe that might be addressed by potentially federal rules of criminal procedure 52, this notion of harmless error, the fact that when there are errors that don't affect the defendant's substantial rights, under that provision, this Court must disregard such errors. There are harmless errors that occur all the time, and when they are reviewed by this Court or any appellate court, it is the case that unless it affects the defendant's substantial rights, unless it would affect judicial proceedings, as long as it wouldn't waste judicial resources, those errors must be corrected. Here, none of those factors have been met, and so neither of the last two prongs are met by the defendant in his argument and his appeal. Briefly, I'd like to talk about some of these recent cases that were raised actually by us in the 28-J letter that we filed, particularly Boris and Villapa, which are two Ninth Circuit recent cases that at first blush might seem to deal with this issue, but actually are an applicant. In both those cases, the real issue was whether or not multiplicitous convictions would affect the defendant's substantial rights, not necessarily multiplicitous sentences. In DICTA, this Court in those cases seemed to collapse the distinction between the effect of convictions and the effect of sentences, namely multiplicitous convictions entail both direct additional harm in the form of special assessments and collateral consequences in the form of potential higher sentences under a recidivist statute if the defendant were to reoffend. However, in both those cases... Can I ask you a question, because I have a concern about, and you know, you don't have a lot of time, but I have a concern about what counsel raised about the improper enhancement under 851, because if he was improperly enhanced under 851, that would affect the 121 sentence, correct? On count one, yes. Oh, I'm sorry, not on count three, Your Honor. On count three, yes, because the defendant claims that the 851 enhancement, the two prior felonies, that one of them was actually not a felony, correct? Yes, it was reduced, I believe, after the fact to a misdemeanor, or it was, I believe under state law, it was somehow reduced from the felony that it once was. Right, but it was used as an enhancement, which by using it as an enhancement put him at 120 months. The argument he raises is that under the state statute it was expunged, it was reduced to a misdemeanor, it was dismissed, and it was placed under seal. So it was essentially expunged. And you would agree that expunged cases are not counted as felonies for purposes of the guidelines, correct? Well, if I could take a step back there. I believe while it may have been expunged or reduced to a misdemeanor, I believe as long as at the time, under this court's precedent, as long as at the time that the crime was committed it was considered a felony conviction, it would be a proper predicate for an 851 and or a proper predicate for potential enhancements under the guidelines. In what case is that the precedent that you're citing? I don't have it on me, Your Honor, and I apologize, but I believe we've, down below in the district court at sentencing there was this very argument made by the defendant with respect to the applicability of a conviction like this. We cited in our brief multiple cases that fit for the proposition. I believe that as long as the crime was committed, when the crime was committed, it was a felony. Any changes in state law after the fact don't affect the fact that it was once a felony conviction and it's a proper predicate. And I looked at the state record. I could not find, I'm sorry, at the lower court record. I could not find the case that says that in the Ninth Circuit. You're saying there is one? Yes, Your Honor, I believe so. For purposes of whether or not you can still bring an 851 information alleging those convictions, yes, Your Honor, I do believe in their strong argument in case law suggesting that for 851 purposes, for 851 information purposes, you can allege a predicate that was a felony at the time that the crime was committed. All right. And you're telling me I could find that in the lower court? Correct, Your Honor. I believe it was probably in the motion to dismiss the 851 in our response to that motion in our opposition. That said, I don't think that the 851 or the prior predicate affected the legality of the 120-month sentence. The defendant, to be clear, in his appeal, does not, in any portion of his appeal, challenge the validity of the 120-month sentence on Count 3. He spends his time challenging Count 1, which is his right to do because it was over the stat max. But, again, the 120-month sentence on Count 3, which swallows up the sentence on Count 1, is not challenged. It's valid. In fact, the district court below, before even apportioning out, you know, how many months and how many years would go to Count 1 and how many months and how many years would go to Count 3, noted that based on the defendant's prior criminal history, based on the conduct that the defendant had committed, based on the applicability of the enhancement, 2K2.1, the defendant was subject to a 120-month in prison, the low end of the guidelines range. And after that, after the district court had already decided that that was the proper sentence, it said three years on Count 1 to run concurrent with the 10 years on Count 3. But he went back and forth over the base offense level because you were arguing the 26 and the defendant was arguing the 22. Yes, Your Honor, but I will say that the defendant agreed to the enhancement multiple times below, did not challenge the applicability of 2K2.1 and the fact that a gun was used in connection with the felony offense. It's only on appeal that the defendant argued that now. I believe six times or so, as we noted in our brief, the defendant agreed to the applicability of that enhancement. And so the reason the district court might not have got in, didn't go into great detail with respect to that enhancement was that neither party objected to it. Neither party objected to that enhancement. Neither party thought that the sentence was illegal, either sentence at the time. And so the sentence at the time was agreed upon by both parties. And in fact, the reason that the defendant agreed to that enhancement may have been to gain some credibility and then tactically to make an argument under 3553 for a lower sentence because the defendant hadn't technically brandished the gun. The gun was inoperable, which doesn't matter for purposes of the enhancement, and therefore under 3553 should get a lower sentence. So the defendant agreed to it down below and is waived for making that argument now. Thank you, Your Honor. Your time is up. I'll ask my colleague whether we want to give you some additional time for rebuttal, but that's not promised, okay? Thank you, Your Honor. Okay, let's hear from the defendant. Thank you, Your Honor. Devin Burstein on behalf of Mr. Grimaldo. I don't often get to go second. That took me a little bit by surprise because I am the appellant. But I wanted to get right in. So in terms of rebuttal, I'm not sure how that will work, Your Honor. No, that's a good point. I think we have this backwards on our paperwork here. Sorry about that. No, you're right. He doesn't get one, but we'll be sure that you have some extra time here. So we'll treat you fairly. Okay, thank you very much, Your Honor. Going right to the illegal sentence, what my colleague says sounds good. The problem is that it's all foreclosed by this court's precedent. We all agree, Your Honors, that Mr. Grimaldo received an illegal sentence, that is, one above the statutory maximum. And the question is simply one of remedy. This court's case law, however, conclusively answers that question in Mr. Grimaldo's favor. In cases such as Kincade, Zalapa, Shoppe, and more recently in Boris, what this court has said is clear that when the district court imposes an illegal sentence, even a concurrent one, the remedy is to remand for resentencing. My colleague says that's dicta. Well, this court can look at Boris, the most recent case, and what Boris said describing Zalapa was, Boris says, holding the collateral consequences from an erroneously imposed sentence, even a concurrent one, affect a defendant's substantial rights. We know that Zalapa says, imposition of an erroneously imposed sentence, even a concurrent one, can have significant collateral consequences that we cannot foretell at the time of the decision. These collateral consequences affect a defendant's substantial rights and therefore justify vacating the sentence. That's the exact same circumstance here. And there's good reason for that rule, and the reasons are really twofold. First of all, this court has clearly stated, and it should be apparent to everybody, and to quote from Shoppe, it is a miscarriage of justice to give a person an illegal sentence. That speaks for itself. Above all, judges, of course, must follow the law. But more importantly, perhaps, defendants are entitled to be sentenced to lawful sentences. As Judge Smith said, essentially the district court, accidentally, no doubt, but broke the law. And when that happens, this court corrects it. I mean, I think that was the whole idea from the decision in Medley, where I know it's out of circuit, but I think the court, I believe it's the Fourth Circuit, but I think they said it so well. Were this court to affirm simply to avoid burdening the criminal justice system, we would diminish the public faith in the integrity of our courts. What gives people confidence in our justice system is not that we merely get things right. Rather, it is that we live in a system that upholds the rule of law, even when it is inconvenient to do so. We're talking here about a sentencing proceeding that took, at the outset, with all the contested issues, an hour. That's from calling the case to completion. This is not a big, onerous thing. The point is to get it right. There's no doubt the district court got it wrong. And that's not to cast aspersions on the district court. Mistakes were made. And what this court steps in to do, and what makes our system truly wonderful, is that when mistakes are made, we correct them. And this idea that, oh, it's harmless, it's not harmless. It's not harmless for a number of reasons. Allowing an illegal sentence, that's not an erroneous sentence. That's one that Congress has said you cannot impose. Allowing an illegal sentence to remain on the books and to affirm, to rubber stamp, that would essentially make this court, as we noted, an accessory after the fact to the illegality. That's not what we do in our system. That's what makes us great. We correct mistakes. We understand the importance of procedural correctness. But there's a whole other reason. And that's this idea of the potential impacts in the future. And that's what Kincaid speaks to. This court's binding precedent speaks to the potential impacts in the future. And we've noted those. That this sentence, the three-year sentence, could be used to increase criminal history under 4A1.1, I believe, where he would, yeah, 4A1.1a, he would receive three additional criminal history points for each prior sentence of imprisonment exceeding one year and one month. So I'm going to ask you this, counsel. I take your point. But what you're in essence saying is, if your client offends again, if he violates the law, he would be penalized more. That seems a little strange to me as well. I mean, I think it's strange that we condone an illegal sentence. But on the same token, we're basically, you seem to be saying that, you know, your defendant, your client, if he offends again, he's charged again, he's going to pay a penalty because of the illegal sentence. Well, I understand why that seems strange, Your Honor. And I would respectfully suggest it's not me saying it. It's Kincaid saying it. And so what Kincaid says is, application of the concurrent sentence doctrine, and I'm quoting, inherently requires the assessment of all adverse collateral consequences of unreviewed convictions or sentences at the time of appeal. As a practical matter, it may be impossible at the time to foretell all future adverse collateral consequences for the appellant. And then they go on to say, although neither we nor Kincaid can identify a specific prejudice which may stem from his erroneous sentence, we are unwilling to place upon Kincaid the risk that such prejudice will manifest itself in the future. I get your point about Kincaid. If Kincaid is our controlling precedent, are there not contrary precedents that we would need to address in this case? No, Your Honor. Not a single one of those from this court involves an illegal sentence. That is one over the statutory maximum. And that's a fundamental distinction. There's not one of those sentences that is in the same procedural posture. There's no conflict. There may be some slight out-of-circuit conflict, but there's no internal conflict at all. We don't have a Miller v. Gammey issue. We do not have a Miller v. Gammey. There's no need to take this case en banc. We are entirely within this line of precedent that goes, Kincaid, Zalapa, Shopp, Voorhees. What is the remedy you're seeking, that we direct the district court to reduce that sentence from 36 months to 12 months or to remand to a new sentencing? The latter, Your Honor. A remand for resentencing, which is what this court has done, what this court did in Kincaid, Zalapa, Shopp, and Voorhees. The district judge in this case has since retired, so we have to basically start anew in some ways. We need a district court judge who has to relearn the entire case, if that's a remedy you're asking for. Well, the sentencing documents in this case are not long, Your Honor. And I understand that, but I think the flip side of it is we're talking about the defendant's fundamental rights. And, yes, it's true that the judge will have to, that that district judge has retired, but that's certainly not the fault. Sorry, my lights went off here automatically. It's certainly not the fault nor the responsibility of Mr. Grimaldo. I mean, that, you know, he can't control when judges take senior status or retire or even if they want to recuse themselves. I mean, this happens regularly. But to remand for a resentencing hearing is not onerous. It's what this court virtually always does in the case of a sentencing. It remands for an open sentencing. I mean, it's actually what the government will often want when the defendant is going, no, no, no, no, no. Just remand this one little thing because we don't want the chance of the sentence going up. And this court always says no. If we're sending it back to the district court, the district court gets to take another look at it. And that's especially appropriate here, Judge Lee, I think also because we do have this issue on the four-level enhancement that regardless of where this court comes out on it, we can agree on that whole that it wasn't properly litigated below. And so if we're – our goal is to get it right in sentencing and making sure we're not depriving people of their fundamental right to liberty based on mistakes. This is a perfect case to send it back, so at least that can be fleshed out because we all can agree, and it may be the trial lawyer's fault, but it's certainly not Mr. Grimaldo's. But we can all agree the district court didn't make the proper findings on the gun enhancement. How this – Let's say we take your point on the unfairness of the legal sentence. But on the enhancement issue, the sentencing enhancement, the government has made the point in its presentation that basically the defendant had this information, agreed to it, there was no problem. I guess they're contending it's waiver. You're probably saying it's forfeiture. How do we deal with this? It's clearly forfeiture because waiver requires an intentional relinquishment of a known right by the defendant. And there would be no – having been a defense attorney for a long time, there would be no – and this court knows there's no basis to not raise this objection before the district court. So the government comes up with one. That's creative. Maybe they were trying to just save it for 3553. No, the trial lawyer just made a mistake because what you would do if you caught the issue is you'd say, look, we don't think it applies, Your Honor, for X number of reasons under the guidelines. But even if the court disagrees, give us the benefit of the doubt under 3553A. You would never not raise a potentially meritorious enhancement, especially a four-level enhancement. I mean, it really impacts the guidelines here. It goes from – By the way, just so you know, we're letting you run on for another little bit. We'll give you up to the two minutes of overtime because of the goshery about the who starts first. Thank you. Fantastic. And I'm also just trying to answer the court's question. So under Elano, it's clearly forfeiture. Rule 52 comes into play. And then there's no finding here that how this inoperable, gunned-up weapon facilitated that simple possession offense. I'm not saying the district court couldn't make that finding, but here it was the government's burden to show how possession qualified, and they didn't meet the burden, and there's no finding. So because the case should go back to the illegal sentence, Mr. Grimaldo should at least get the shot to make this argument. And with that, unless the court has further questions, I'll submit with 30 seconds on the clock. Do either of my colleagues have additional questions? No. I guess not. Well, thank you very much. We appreciate the arguments of both counsel. The case just argued is submitted. And, Your Honor, quick question. I apologize. Did I get the full ten minutes in my first go, or was it just eight minutes? Well, I think so. Let's double-check. He did, Your Honor. He did. Okay. All right. Thank you, Your Honor.  I think that's right. Thank you both. We appreciate your arguments. Very helpful. Thank you, Your Honor. The case is directly submitted. And we will now hear our last argument case of the day, which is United States v. Hanna.
judges: M. Smith, Cardone, Lee